IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

RYAN J. SULLIVAN,
      Plaintiff,

v.                                                          Civil Action No. 3:24cv281 (DJN)

LIEUTENANT BRANCH, *et al.*,
      Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on two motions:  a Motion to Dismiss filed by
Defendants Lieutenant Branch, Captain Harris, Captain J. Johnson and Major Lawson (ECF No.
37); and a Motion for Summary Judgment filed by Defendants Sergeant S. Freeman, Deputy D.
Ritch and Sergeant Gaines (ECF No. 39).[1]  For the reasons set forth below, the Court will
DISMISS Plaintiff's Complaint as to all parties except Defendants Freeman, Ritch and Gaines.
The Motion to Dismiss (ECF No. 37) will accordingly be DENIED AS MOOT.  The Court will
GRANT IN PART and DENY IN PART Defendants' Motion for Summary Judgment (ECF
No. 39.)

### I.    BACKGROUND

Plaintiff Ryan J. Sullivan ("Plaintiff"), a Virginia inmate proceeding *pro se*, filed this
42 U.S.C. § 1983 action, in which he alleges that Defendants Branch, Freeman, Gaines, Ritch,
Harris, Johnson and Lawson, as well as Defendants Captain Richardson and Nurse Plummer,
violated his rights under state law and the Fourth, Eighth and Fourteenth Amendments while he

---

[1]    The Complaint names two other Defendants who have not joined either pending motion:
Captain Richardson, who filed an Answer (ECF No. 30) and an Amended Answer (ECF No. 35),
and Nurse Plummer, who has yet to be served (*see* ECF Nos. 44, 47).

was confined in the Richmond City Jail ("RCJ").[2]  Specifically, in his Complaint, (ECF No. 6

("Compl.")), Plaintiff raises the following claims:

1.     After Plaintiff requested a renewal of his sublocade prescription, RCJ officials, including Defendants Branch and Johnson, moved him to solitary confinement without due process for an unstated amount of time. (*Id.* at 5–6.)

2.     On February 1, 2024, Defendants Ritch and Gaines strip-searched Plaintiff, in violation of his rights under the Fourth Amendment. (*Id.* at 6–7.)

3.     Following the February 1, 2024 strip search, Defendants Ritch and Gaines deployed a chemical agent and then physically attacked Plaintiff, using excessive force in violation of his rights under the Virginia Administrative Code (6VAC35-101-1120) and the Fourteenth Amendment. (*Id.*)

4.     After utilizing the chemical agent and physical force against Plaintiff, Defendants Ritch and Gaines denied Plaintiff an opportunity to rinse the chemical agent out of his eyes and off of his body before placing him in a restraint chair, in violation of his rights under the Fourteenth Amendment. (*Id.* at 7–8.)

5.     On February 28, 2024, Defendants Branch, Richardson and Harris, along with unidentified medical personnel, deprived Plaintiff of his personal property and repeatedly placed him in a restraint chair until his circulation was cut off and he could not feel his hands.  These Defendants then held Plaintiff in the medical unit for several weeks and deprived him of his property during that time.  (*Id.* at 8–10.)

6.     On March 25, 2024, Defendant Freeman physically attacked Plaintiff, using excessive force against him in violation of his rights under the Eighth Amendment.  (*Id.* at 11.)

7.     Following Defendant Freeman's alleged assault on Plaintiff, unidentified officers failed to transport Plaintiff to the hospital.  (*Id.* at 11–12.)

Plaintiff requests monetary damages and injunctive relief in his Complaint.  (*Id.* at 13.)

---

[2]     The Court employs the pagination assigned by the CM/ECF system.  The Court also corrects spelling, capitalization and punctuation errors in its quotations from the parties' submissions.

Defendants filed their respective motions on January 27, 2025. (ECF Nos. 37, 39.) Following the filing of these motions, the Court provided Plaintiff notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF Nos. 41–42.) However, Plaintiff opposed only the Motion for Summary Judgment filed by Defendants Freeman, Ritch and Gaines. (ECF No. 49.) Defendants Freeman, Gaines and Ritch filed a reply brief on March 24, 2025, (ECF No. 50), rendering these motions ripe for the Court's review.

## II.     ANALYSIS

### A.     Defendants' Motion to Dismiss / Plaintiff's Motion for Voluntary Dismissal

The Court first addresses Defendants' Motion to Dismiss and what it construes to be Plaintiff's motion for voluntary dismissal of claims against certain Defendants. Plaintiff not only failed to oppose Defendants' Motion to Dismiss, but he also appears to request dismissal of his claims against the Defendants who filed it, along with Defendants Richardson and Plummer. (*See* ECF No. 49, ¶ 1 ("This is a response to Sergeant Gaines, Sergeant Freeman, and Deputy Ritch's Motion for Summary Judgment. These three are the only ones I would like to continue to pursue charges against . . . . I can see how the rest cannot be held accountable in the same light.").) The Court construes this statement as a motion seeking voluntary dismissal of Plaintiff's claims against all Defendants except Defendants Freeman, Ritch and Gaines.

Federal Rule of Civil Procedure 41 governs the voluntary dismissal of actions. In pertinent part, it permits plaintiffs to unilaterally dismiss claims raised against defendants who have not yet filed an answer or motion for summary judgment. *See* Fed. R. Civ. P. 41(a)(1)(A)(i). Plaintiffs who seek to dismiss claims not covered under Rule 41(a)(1)(A) may only do so by order of the court. *See* Fed. R. Civ. P. 41(a)(2). Generally, a plaintiff's motion for

3

dismissal "should not be denied absent substantial prejudice to the defendant." *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986).

Here, Plaintiff's notice automatically effectuates the dismissal of his claims against Defendants Branch, Harris, Johnson, Lawson, and Plummer, as these Defendants have not filed an answer or a motion for summary judgment. As to Defendant Richardson, who filed an answer, the Court notes that he has not opposed Plaintiff's request for dismissal and finds that he will not be substantially prejudiced by dismissal. Accordingly, the Court will grant dismissal of Plaintiff's claims against Defendant Richardson as well. Plaintiff's voluntary dismissal of his claims against Defendants Branch, Harris, Johnson and Lawson renders their Motion to Dismiss moot. The Court will therefore deny this motion as such and dismiss without prejudice Claims One, Five, and Seven, none of which implicate the remaining Defendants Freeman, Ritch and Gaines.

### B.    Defendants' Motion for Summary Judgment

#### 1.    Legal Standard

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment must inform the court of the basis for the motion and identify the parts of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits

or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a motion for summary judgment, courts "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

### 2.    Relevant Facts

In support of their Motion for Summary Judgment, Defendants Freeman, Ritch and Gaines submit the declarations of Defendants Ritch (ECF No. 40-1) and Freeman (ECF No. 40-2). Plaintiff, in turn, filed a sworn response to the Motion for Summary Judgment. (ECF No. 49.) Plaintiff attached to his opposition a disciplinary report (ECF No. 49-1); his appeal of the disciplinary charge (ECF No. 49-2); and a response to the appeal (ECF No. 49-3).

Cognizant of the Fourth Circuit's recent guidance, the Court accepts Plaintiff's sworn opposition and considers it as part of the summary judgment record. *See Gowen v. Winfield*, 130

F.4th 162, 175–76 (4th Cir. 2025) ("Affidavits and verified complaints may not be cast aside at summary judgment, 'even affidavits that are uncorroborated, self-serving, or filed by *pro se* prisoners.'" (quoting *Alexander v. Connor*, 105 F.4th 174, 183 (4th Cir. 2024))).  The Court thus rejects Defendants' Freeman, Ritch and Gaines's repeated assertions that Plaintiff "offers no evidence in support of his argument."  (ECF No. 50 at 2.)

Consistent with the foregoing submissions and principles, the following facts are established for purposes of the Court's analysis of Defendants' Motion.  All permissible inferences are drawn in favor of Plaintiff.

### a. February 1, 2024 Incident

#### (i) *The Strip Search*

At approximately 9:03 a.m. on February 1, 2024, Defendants Gaines and Ritch responded to Plaintiff's cell, after a deputy conducting security rounds reported that Plaintiff "did not look right."  (ECF No. 40-1, ¶¶ 5–6.)  Believing that Plaintiff was under the influence of drugs, the officers escorted him to RCJ's medical unit for observation and to search him for contraband. (*Id.* ¶¶ 6–7.)  While conducting a strip search of Plaintiff, Defendants Gaines and Ritch perceived that Plaintiff had something in his mouth and asked him what the object was.  (*Id.* ¶ 7.) Plaintiff initially responded that it was a note, but then changed his answer, stating that it was drugs or candy.  (*Id.*)  Plaintiff refused to open his mouth despite several commands that he do so.  (*Id.* ¶ 8.)

#### (ii) *The Use of Force*

After Plaintiff refused to comply with Defendants' orders, Defendant Gaines sprayed a burst of oleoresin capsicum ("OC") spray in Plaintiff's face.  (*Id.* ¶¶ 9–10.)[3]  In the aftermath,

---

[3]     The parties dispute what happened in the leadup to Defendant Gaines's deployment of OC spray.  Defendants claim that Plaintiff became combative and attempted to strike Defendant

Plaintiff sustained a head injury. (ECF No. 49 at 4–5.) The parties dispute the manner in which Plaintiff sustained this injury. Defendants claim that Plaintiff slipped and hit his head, (ECF No. 40-1 ¶ 12), while Plaintiff disputes "losing [his] balance" and claims that his head injury was the result of Defendants beating, kicking and striking him with the can of OC spray. (ECF No. 49 at 4–5.) Specifically, Plaintiff submits that Defendants Ritch and Gaines "both hit [him] with closed fists and kicked [him] even after [he] fell to the floor." (*Id.* at 5.)

After Plaintiff sustained his head injury, Defendants secured him in a restraint chair (ECF No. 40-1 ¶ 15; ECF No. 49 at 4), and a nurse provided him with eye drops. (ECF No. 40-1 ¶ 14; ECF No. 49 at 4.) However, the parties dispute the order of these events, as well as the full extent of the treatment that Plaintiff received. Defendants maintain that they permitted Plaintiff to use a sink to rinse out his eyes and did not secure him in the restraint chair until after the nurse's administration of eye drops. (ECF No. 40-1 ¶¶ 14–15.) Plaintiff disputes that Defendants permitted him to use the sink at all, claiming that Defendant Ritch "grabbed the back of my head and hair" to pull him away and stated, "Naw, you're gonna feel that." (ECF No. 49 at 6.) Plaintiff also claims that Defendants Ritch and Gaines restrained him before the nurse provided him with eyedrops. (*Id.*)

---

Gaines "with closed fists." (*See* ECF No. 40-1 ¶ 8.) Plaintiff calls this claim "absolutely false" and notes that the disciplinary report generated post-incident does not contain any information suggesting that he was combative. (*See* ECF No. 49 at 3–4.) But Plaintiff's response lacks "specific facts" to rebut Defendants' version of events and thus constitutes no more than a "mere . . . denial of the adverse party's pleading[.]" *Tyler v. Prince George Cnty., Md.*, 16 F. App'x 191, 192 (4th Cir. 2001). As explained below, however, this failure to create a genuine dispute of fact does not affect the outcome of the Court's analysis concerning Defendants' Motion for Summary Judgment or any claim targeted by it.

**b.      Plaintiff's State Court Proceedings**

On February 8, 2024 and March 7, 2024, while housed at RCJ, Plaintiff pled guilty in Henrico County Circuit Court to violating the terms of his probation.[4]

**c.      March 25, 2024 Incident**

At approximately 9:20 p.m. on March 25, 2024, Defendant Freeman was conducting security checks and perceived Plaintiff to be acting "strangely in his cell." (ECF No. 40-2 ¶ 4.) Defendant Freeman entered the cell, after which Plaintiff sustained a head injury. (*See* ECF No. 40-2 ¶ 10; ECF No. 49 at 8.)

The parties dispute the details of this encounter. Defendant Freeman claims to have observed orange suboxone pills on the floor of Plaintiff's cell and that, in attempting to get rid of the pills, Plaintiff slipped on them, hitting his head in the process. (*See* ECF No. 40-2 ¶¶ 4–6.) Defendant claims that Plaintiff then rose to his feet, in response to which Defendant Freeman "guided [Plaintiff] to the floor to prevent [him] from discarding the suspected narcotics." (*Id.* ¶ 6.) Plaintiff, in turn, claims to have been "picking up trash in [his] cell" when Defendant Freeman entered, and that Freeman "grabbed [him] from behind" before "slamm[ing him] head first on the ground." (ECF No. 49 at 8.) Plaintiff states that he hit his head so hard that he "was unable to get up at first" and suffered "a large gash on [his] face." (*Id.*)

---

[4]      *See* VIRGINIA'S JUDICIAL SYSTEM, http://www.vacourts.gov (select "Case Status and Information" tab; select "Circuit Court Case Information and Fee Calculation" from drop-down menu; select "Circuit Court Case Information" link; select "Henrico Circuit Court" from drop-down menu; enter "Sullivan, Ryan" in the "Name" field; click "Search by Name" button). "The Circuit Court's docket [and the Supreme Court of Virginia's docket] [are] accessible through the Virginia Judicial System Website. Federal courts in the Eastern District of Virginia regularly take judicial notice of the information contained on this website." *McClain v. Clarke*, No. 3:13cv324, 2013 WL 6713177, at *1 n.6 (E.D. Va. Dec. 18, 2013) (citations omitted).

### 3.    Court's Analysis

#### a.    Claim Two (Fourth Amendment Violation)

In Claim Two, Plaintiff asserts that Defendants Ritch and Gaines's February 1, 2024 strip search violated his rights under the Fourth Amendment. (Compl. at 6–7.) For the reasons set forth below, the Court finds that Defendants stand entitled to an entry of judgment in their favor as to this claim.

The Fourth Amendment, which applies to the states via the Fourteenth Amendment, protects the right of the people to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. In a recent decision, the Fourth Circuit discussed the general principles that guide a court's evaluation of sexually invasive searches conducted in a detention setting. *Johnson v. Robinette*, 105 F.4th 99, 113 (4th Cir. 2024). First, it remains well-established that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). The Fourth Circuit acknowledged that "inmates 'retain an interest in some degree of bodily privacy and integrity[,]'" *Johnson*, 105 F.4th at 113 (quoting *King v. Rubenstein*, 825 F.3d 206, 215 (4th Cir. 2016)), but also recognized that, "when addressing these types of constitutional claims, 'deference must be given to the officials in charge of the jail unless there is substantial evidence demonstrating [that] their response to the situation is exaggerated.'" *Id.* (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 330 (2012)). The Fourth Circuit also noted that "sexually invasive searches of inmates present special considerations . . . because 'a sexually invasive search constitutes an extreme intrusion upon personal privacy, as well as an offense to the dignity of the individual.'" *Id.* (quoting *Sims v. Labowitz*, 885 F.3d 254, 261 (4th

9

Cir. 2018)). "When the scope of a search exceeds a visual inspection of an individual's naked body, the magnitude of the intrusion is even greater." *Sims*, 885 F.3d at 261 (citation omitted).

To determine whether a sexually invasive search was constitutionally unreasonable, courts employ the balancing test announced in *Bell*. *Johnson*, 105 F.4th at 114. "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . . [and] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. Courts must examine the search in its complete context and consider the following factors: "(1) the scope of the particular intrusion; (2) the manner in which the search was conducted; (3) the place in which the search was performed; and (4) the justification for initiating the search." *Johnson*, 105 F.4th at 114 (quoting *Sims*, 885 F.3d at 261). Applying this balancing test in the prison context, the Supreme Court in *Bell* held that a prison policy requiring all inmates and pretrial detainees to submit to visual body cavity searches following contact visits did not violate the Fourth Amendment. *Bell*, 441 U.S. at 558–60.

Applying the *Bell* factors here, the Court concludes that Defendants Ritch and Gaines's search of Plaintiff was reasonable and therefore did not violate the Fourth Amendment. Beginning with the final *Bell* factor — the justification for the search — the Court finds that the record establishes that Defendants acted upon a report that Plaintiff "did not look right" and concluded that he could be under the influence of drugs. (ECF No. 40-1 ¶ 5.) Defendants' consequent belief that Plaintiff may have been in the possession of contraband provides a legitimate justification for conducting a strip search. *See, e.g., Florence*, 566 U.S. at 332–34 (observing that "[w]eapons, drugs, and alcohol all disrupt the safe operation of a jail" and that

10

"[t]here is a substantial interest in preventing any [] inmate . . . from putting all who live or work
at these institutions at even greater risk").

The elements relevant to the search itself also weigh in favor of Defendants. First, the
search occurred in RCJ's medical unit, and nothing in the record suggests that anyone besides
Plaintiff and Defendants Ritch and Gaines were present. Thus, the third factor — the location in
which the search occurred — weighs in favor of reasonableness. *See Johnson*, 105 F.4th at 116
(finding this factor weighed "heavily" in favor of defendants where, "[a]ccording to [plaintiff's]
testimony, every strip search was conducted in the privacy of his cell, by a member of the same
sex [], and outside the view of any other persons"). Furthermore, the scope of the intrusion and
manner in which the search was conducted also support a finding of reasonableness.[5] The record
does not suggest that Defendants ever physically touched Plaintiff while searching him. That the
search was visual rather than physical in nature speaks to a limited level of intrusiveness, further
supporting a finding of reasonableness.[6] *Cf. Gore v. Dorchester Cnty. Sheriff's Office*, No.
2:22cv2322, 2024 WL 4151917, at *9 (D.S.C. July 25, 2024) ("[T]he scope of the intrusion was
relatively limited, as there is no evidence that an officer touched or penetrated Plaintiff's
genitals, forced her to perform sexual acts in front of officers or a camera, or made her undergo a
painful medical procedure.").

---

[5]    In *Sims*, the Fourth Circuit noted that, in some cases, the scope of the search and the
manner in which it was performed may "involve overlapping inquiries." 885 F.3d at 261.

[6]    Plaintiff submitted a disciplinary appeal form, in which he claimed that Defendant Gaines
attempted to "reach into [his] mouth[.]" (ECF No. 49-2.) To the extent the unverified document
constitutes admissible evidence, it does not change the Court's conclusion that the scope of the
intrusion was limited. Indeed, "the fact that an inmate is momentarily, incidentally, or
accidentally touched during a strip search does not alone render the search unreasonable."
*Jonhson*, 105 F.4th at 117. "[S]ome physical contact is permissible," the Fourth Circuit has
reasoned, "and indeed [may be] unavoidable." *Id.* at 118 (first alteration in original) (quoting
*United States v. Edwards*, 666 F.3d 877, 886 (4th Cir. 2011)).

In light of the valid justification for Defendants' strip search of Plaintiff, the private setting in which the search occurred, and the manner in which it was performed, the Court finds the search to have been reasonable for purposes of the Fourth Amendment. The Court will therefore grant Defendants' Motion for Summary Judgment as to Claim Two.

b.   **Claim Three (Fourteenth Amendment Violation / Excessive Force)**

In Claim Three, Plaintiff asserts that Defendants Ritch and Gaines used excessive force after conducting the previously discussed strip search. Specifically, Plaintiff claims that Defendants deployed OC spray in his face and then physically attacked him. (Compl. at 6–7.) For the reasons set forth below, the Court finds that, based on the facts asserted by Plaintiff, a reasonable factfinder could conclude that Defendants Ritch and Gaines violated Plaintiff's rights through their alleged use of force and will therefore deny Defendants' motion for summary judgment on this claim.

The alleged use of force relevant to Claim Three implicates Plaintiff's rights under the Fourteenth Amendment, because he was a pretrial detainee at the time of the incident. *See, e.g., Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (applying Fourteenth Amendment to claims raised by pretrial detainee awaiting a probation violation hearing).[7] Under the Fourteenth Amendment, a detainee must demonstrate that a defendant "inflicted unnecessary and

---

[7]   Plaintiff repeatedly asserts violations of his Eighth Amendment rights. (*See, e.g.*, Compl. at 8.) Given his pretrial detainee status at the time of the February 2024 incident, however, the Court analyzes Plaintiff's claims under the Fourteenth Amendment.

Plaintiff also asserts that a provision of the Virginia Administrative Code ("VAC"), 6VAC35-101-1120, protects him from the use of chemical agents. (ECF No. 49 at 5). The Court disagrees. The section of the VAC to which Plaintiff cites arises in Chapter 101, which is entitled "Regulations Governing Juvenile Secure Detention Centers[.]" 6VAC35-101-1120. Because the events from which Plaintiff's claims arise occurred at a city jail, not a juvenile detention center, the cited provision fails to offer Plaintiff any recourse.

wanton pain and suffering upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir.

2006) (citations omitted) (internal quotation marks omitted), *abrogated on other grounds by*

*Wilkins v. Gaddy*, 559 U.S. 34 (2010). A detainee may prevail by "providing only objective

evidence that the challenged governmental action is not rationally related to a legitimate

governmental objective or that it is excessive in relation to that purpose." *Kingsley v.*

*Hendrickson*, 576 U.S. 389, 398 (2015) (citations omitted).[8] To determine whether force was

objectively unreasonable, courts may consider factors including:

> the relationship between the need for the use of force and the amount of force used;
> the extent of [the detainee's] injury; any effort made by the officer to temper or to
> limit the amount of force; the severity of the security problem at issue; the threat
> reasonably perceived by the officer; and whether the [detainee] was actively
> resisting.

*Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Because "officers facing disturbances 'are often forced to make split-second judgments'

. . . a court must judge the reasonableness of the force used from the perspective and with the

knowledge of the defendant officer." *Id.* at 399 (citing *Graham*, 490 U.S. at 397). Courts must

also recognize that "agents of the state are permitted to exercise a certain degree of force in order

to protect the interests of society." *Sawyer v. Asbury*, 537 F. App'x 283, 294 (4th Cir. 2013).

Thus, not every "push or shove, even if it may later seem unnecessary" is serious enough to rise

to the level of a constitutional violation. *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008)

(quoting *Graham*, 490 U.S. at 396), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S.

34 (2010). Consequently, the Court "must accord due deference to an officer's efforts to restrain

a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would

---

[8]    In *Kingsley*, the Supreme Court determined that the appropriate standard for the
Fourteenth Amendment is "only that the officers' use of that force was *objectively*
unreasonable," not that "the officers were *subjectively* aware that their use of force was
unreasonable . . . ." 576 U.S. at 391.

give encouragement to insubordination in an environment which is already volatile enough.'"
*Scarbro v. New Hanover Cty.*, 374 F. App'x 366, 370 (4th Cir. 2010) (quoting *Grayson v. Peed*,
195 F.3d 692, 696 (4th Cir. 1999)). In addition, the determination of whether excessive force
was used must be made "from the perspective of a reasonable officer on the scene, including
what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at
397.

The summary judgment record in this case stands rife with disputes of fact as to
Defendants Ritch and Gaines's alleged use of force. For instance, the parties dispute whether
Plaintiff swung his fists at Gaines after the use of the OC spray and what caused Plaintiff's head
injury on the date in question. (*Compare* ECF No. 40-1 ¶¶ 8–9 *with* ECF No. 49 at 3–4.)
Defendants Gaines and Ritch assert that Plaintiff slipped and hit his head on a sink, while
Plaintiff claims that Defendants beat, kicked and hit him with the can of OC spray while he was
standing and after he fell to the ground. (*Compare* ECF No. 40-1 ¶ 12 *with* ECF No. 49 at 3–5.)
These disputes of fact preclude any conclusive analysis of the following *Kingsley* factors: (1) the
relationship between the use for the need of force and the amount of force used; (2) the severity
of the security problem at issue; (3) the threat reasonably perceived by the officer; and (4)
whether Plaintiff was actively resisting. *Kingsley*, 576 U.S. at 397.

Consistent with the above, and viewing the evidence in the light most favorable to
Plaintiff, as it must, the Court concludes that a reasonable jury could consider the evidence
before it and find that Defendants Ritch and Gaines's use of force was objectively unreasonable.
Accordingly, the Motion for Summary Judgment will be denied as to Claim Three.

14

### c.    Claim Four (Fourteenth Amendment Violations)

In Claim Four, Plaintiff asserts that Defendants Ritch and Gaines placed him in a restraint chair without first allowing him to rinse OC spray from his eyes and his body. (Compl. at 7–8.) Plaintiff does not specify whether he seeks to assert a claim for excessive force or deliberate indifference to his serious medical needs as to these facts. This Court previously assessed comparable claims through both lenses. *See Wilson v. Laureano*, No. 3:22cv692, 2024 WL 1683616, at *8–13 (E.D. Va. Apr. 18, 2024) (analyzing the refusal to allow an inmate a decontamination shower after being pepper sprayed under both rationales). The Court takes the same approach here.

For the reasons set forth below, the Court finds that, based on the facts as asserted by Plaintiff, a reasonable factfinder could conclude that Defendants Ritch and Gaines violated Plaintiff's rights by depriving him of the opportunity to rinse OC spray off of himself, under both an excessive force and a deliberate indifference rationale. The Court will therefore deny Defendants' motion for summary judgment on this claim as well.

### (i)    *Excessive Force*

Courts in the Fourth Circuit, including this Court, have recognized that "[t]he refusal to allow an inmate a decontamination shower after being pepper sprayed may amount to excessive force." *Id.* at *11 (citing *Mann v. Failey*, 578 F. App'x 267, 269 (4th Cir. 2014)); *see also Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 820 (D. Md. 2022) ("[The] use of pepper spray or other chemical agents may constitute excessive force" when, after "a prisoner is pepper sprayed (even for a legitimate reason), officers then withhold appropriate medical attention." (quoting *Wheeler v. Fritz*, No. RBD-14-2727, 2015 WL 4485436, at *10 (D. Md. July 20, 2015))). Here, the record contains several disputes of fact regarding whether Defendants Ritch and Gaines

15

allowed Plaintiff to wash his face and body before placing him in a restraint chair.

Defendants submit that they permitted Plaintiff to wash himself and that a nurse gave Plaintiff

eye drops before Defendants placed him in restraints. (ECF No. 40-1 ¶¶ 14–15.) Plaintiff, on

the other hand, claims that Defendant Ritch physically prevented him from washing his face or

body, grabbing him by the hair and stating, "Naw, you're gonna feel that," before placing him in

the chair. (ECF No. 49 at 6.) As a result, Plaintiff claims, the OC spray spread from his face to

his chest, abdomen and groin via sweat dripping down his body. (*Id.*) While Plaintiff agrees that

a nurse subsequently provided him with eyedrops, he claims that this occurred after he was

already restrained. (*Id.*)

This case presents different circumstances than in *Wilson*, where the plaintiff had the

opportunity to decontaminate using sprinkler water in his cell and where the defendants removed

the plaintiff's contaminated clothes before a nurse examined him. *See Wilson*, 2024 WL

1683616, at *11. Here, by contrast, a jury crediting Plaintiff's version of events could

reasonably conclude that he was deprived of *any* opportunity to wash OC spray out of his eyes

and off of his body, and that Defendants Ritch and Gaines "inflicted unnecessary and wanton

pain and suffering" on Plaintiff by placing him in a restraint chair before he could decontaminate

himself. *Carr*, 453 F.3d at 605. Accordingly, Defendants' Motion for Summary Judgment will

be denied as to Claim Four under an excessive force theory.

        (ii)   *Deliberate Indifference*

To establish a constitutional violation based on a correctional official's alleged failure to

appropriately respond to medical needs, pretrial detainees must demonstrate that:

> (1) they had a medical condition or injury that posed a substantial risk of serious
> harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act
> to appropriately address the risk that the condition posed; (3) the defendant knew
> or should have known (a) that the detainee had that condition and (b) that the

16

defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). The Fourth Circuit further explained:

> The plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. That showing remains sufficient, but it is no longer necessary. Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, "objectively unreasonable," 576 U.S. at 397; that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly.

*Id.* (parallel citations omitted).

Clearly, "an inmate's rights can be violated when officers withhold proper medical attention or basic hygienic remedies such as a shower or a change of clothes after deploying a chemical agent, thereby allowing the painful effects to linger." *Fobbs v. Hunt*, No. 3:21cv26, 2021 WL 1792087, at *9 (E.D. Va. May 5, 2021); *see also Iko v. Shreve*, 535 F.3d 225, 240, 242–43 (4th Cir. 2008) (determining that officers were deliberately indifferent to inmate's medical needs when they "were all aware that Iko had been doused in pepper spray," saw him collapse in the medical room, and did not seek any medical evaluation or even decontamination). Although Defendants Ritch and Gaines assert that they did not withhold treatment in this case, Plaintiff's submissions create genuine disputes of fact as to the sequence of events — that is, whether he was allowed to rinse his face and body before being placed in a restraint chair — and, as a result, whether Defendants "allow[ed] the painful effects [of the OC spray] to linger." *Fobbs*, 2021 WL 1792087, at *9. Accordingly, the Motion for Summary Judgment will be denied as to Claim Four under a deliberate indifference theory as well.

### d.    Claim Six (Eighth Amendment Violation / Excessive Force)

In Claim Six, Plaintiff asserts that Defendant Freeman used excessive force against him on March 25, 2024. (Compl. at 11.) By this date, Plaintiff had pled guilty to violating the terms

17

of his probation. *See supra* Section III.B.2.a. Consequently, Plaintiff was a convicted inmate at the time of the incident in question. The Court therefore assesses his claim for excessive force under the Eighth Amendment, rather than the Fourteenth Amendment. *See Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) ("[I]t is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners . . . .'") (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

For the reasons set forth below, and as with Claims Three and Four, the Court finds that, based on the facts as asserted by Plaintiff, a reasonable factfinder could conclude that Defendant Freeman violated Plaintiff's rights by employing excessive force against him. The Court will therefore deny Defendants' motion for summary judgment on Claim Six.

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko*, 535 F.3d at 238 (quoting *Williams*, 77 F.3d at 761). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate claims that prison officials used excessive force, the inmate must demonstrate that the "nature" or amount of force employed "was nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010); *see id.* at 38 (observing that "a push or shove that causes no discernible

18

injury almost certainly fails to state a valid excessive force claim") (internal quotation omitted). Under the subjective component, meanwhile, the inmate must also demonstrate "wantonness in the infliction of pain." *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 322). "The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

The Supreme Court has identified several "factors to assist courts in assessing whether an officer has acted with wantonness." *Iko*, 535 F.3d at 239 (internal quotation marks omitted). These include:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Id.* (quoting *Whitley*, 475 U.S. at 321). Additionally, although not dispositive, the extent of the injury suffered by the inmate is also relevant to the subjective inquiry. *Wilkins*, 559 U.S. at 37–38. The extent of the injury "may suggest whether the use of force could plausibly have been thought necessary in a particular situation" or "provide some indication of the amount of force applied." *Id.* at 38 (internal quotation marks omitted). "From such considerations inferences may be drawn as to whether the use of force . . . evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321 (emphasis added) (citing *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985)).

Here, disputes in the factual record preclude summary judgment as to Claim Six. Specifically, the parties dispute Defendant's Freeman's justification for entering Plaintiff's cell, whether Plaintiff slipped and hit his head on the floor or was slammed to the ground by

19

Defendant, and whether Plaintiff ever stood up during this encounter or merely remained dazed on the floor. (*Compare* ECF No. 40-2 ¶¶ 4–9 *with* ECF No. 49 at 7–9.) If, as Plaintiff asserts, Defendant Freeman slammed his face onto the ground and left him so dazed that he could not rise to his feet, Plaintiff's injuries could not have arisen from his own slip-and-fall. Under that scenario, Defendant Freeman also would have had no need to "guide[] [Plaintiff back] to the floor . . . to restrain him and prevent him from discarding [] pills." (ECF No. 40-2 ¶¶ 6–7.)

These disputed facts are relevant to all four *Whitley* factors, and a reasonable jury could view the evidence and find in favor of Plaintiff. This Court has denied summary judgment in cases with similar factual predicates. *See, e.g., Puller v. Barnett*, No. 3:23cv13, 2025 WL 895203, at *4 (E.D. Va. Mar. 24, 2025) (denying summary judgment as to Eighth Amendment excessive force claim due to factual dispute concerning whether the defendant "slammed [a] door on [the plaintiff's] finger" as alleged); *Riddick v. Oliver*, No. 3:19cv472, 2022 WL 657975, at *4 (E.D. Va. Mar. 4, 2022) (denying summary judgment where plaintiff and defendant disputed justification for use of pepper spray and whether any "perceived threat" truly existed). Accordingly, the Motion for Summary Judgment will be denied as to Claim Six.

### e.    Qualified Immunity

Defendants Freeman, Ritch and Gaines next argue that they are entitled to qualified immunity from Plaintiff's claims. (ECF No. 40 at 21–23.) The Court rejects Defendants' arguments to this effect.

Qualified immunity protects government officials performing discretionary functions from civil liability where "their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-step inquiry in which courts must

20

determine: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may perform that inquiry in either order. *Id.* at 236.

The Fourth Circuit imposes a split burden of proof for the defense of qualified immunity. "The plaintiff bears the burden on the first [constitutional right] prong, and the officer bears the burden on the second [clearly established right] prong." *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). When conducting a qualified immunity analysis at the summary judgment stage, courts must view the evidence in the light most favorable to the plaintiff. *See Aleman v. City of Charlotte*, 80 F.4th 264, 287 (4th Cir. 2023) (describing qualified-immunity analysis at the summary-judgment stage). However, "[w]hen resolution of the qualified immunity question and the case itself both depend upon a determination of what actually happened, summary judgment on grounds of qualified immunity is not proper." *Blount v. Collins*, No. 7:12cv476, 2013 WL 4084764, at *4 (W.D. Va. Aug. 13, 2013) (citing *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995))

Defendants Freeman, Ritch and Gaines insist that they are entitled to qualified immunity under both prongs. (ECF No. 40 at 21–23.) However, the existence of various material factual disputes regarding Defendants' conduct renders such a ruling improper at this time. A district court should not grant summary judgment where "there remains any material factual dispute regarding the actual conduct of the defendants." *Blount*, 2013 WL 4084764, at *4. That is exactly the case here. Accordingly, the Court will DENY Defendants Freeman, Ritch and Gaines's request for summary judgment on the basis of qualified immunity.

**f.    Injunctive Relief**

Finally, Defendants Freeman, Ritch and Gaines assert that Plaintiff's requests for injunctive relief have been rendered moot by his transfer from RCJ to a Virginia Department of Corrections facility. (ECF No. 40 at 25.) The Court agrees with Defendants. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Plaintiff is no longer incarcerated at RCJ. (ECF No. 40 at 25.) Accordingly, the Court will dismiss as moot his claims for injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, Defendants Branch, Harris, Johnson and Lawson's Motion to Dismiss (ECF No. 37) will be DENIED AS MOOT, and Defendants Freeman, Ritch and Gaines's Motion for Summary Judgment (ECF No. 39) will be GRANTED IN PART AND DENIED IN PART. The Court ACKNOWLEDGES Plaintiff's voluntary dismissal of all claims against Defendants Branch, Harris, Johnson, Lawson and Plummer and will GRANT Plaintiff's motion to dismiss all claims against Defendant Richardson.

An appropriate order shall accompany this Memorandum Opinion.

Let the Clerk file a copy of this Memorandum Opinion electronically, notify all counsel of record, and send a copy to Plaintiff, as well as to United States Magistrate Judge Colombell.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: September 17, 2025

22